IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 14-cv-02218-WJM

TONEY L. BROWN,

      Applicant,

v.

DAVID ZUPAN, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

    This matter is before the Court on Applicant Toney L. Brown's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1).[1] Respondents filed an Answer (ECF No. 73) on September 2, 2016.  Applicant filed a Reply (ECF No. 91) on January 24, 2017.  After reviewing the pertinent portions of the record in this case including the Application, the Answer, the Reply, and the state court record (ECF No. 52), the Court concludes that the Application should be denied.

## I.  BACKGROUND

    The Colorado Court of Appeals' (CCA's) order affirming the trial court's denial of Applicant's May 10, 2004 postconviction motion described the background of Applicant's criminal proceedings as follows:

---

[1] Because Applicant appears *pro se*, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate.  *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir. 1991).

I. Background

In 1994, defendant was tried and convicted of aggravated robbery, *see* §18-4-302, C.R.S. 2006; first degree criminal trespass, see § 18-4-502, C.R.S. 2006; two counts of third degree assault, *see* § 18-3-204, C.R.S. 2006; false imprisonment, see § 18-3-303, C.R.S. 2006; and two habitual criminal counts, see § 18-1.3-803, C.R.S. 2006.  He appealed, and another division of this court vacated his judgment  of conviction and remanded the case for a new trial. *People v. Brown*, (Colo. App. No. 95CA0177, Mar. 6, 1997) (not published pursuant to C.A.R. 35(f)).

In 1998, defendant was appointed new counsel, and a second trial was conducted.  Just before his second trial, defendant moved for the appointment of conflict-free counsel.  He alleged that Jonathan Bley, his attorney during the first trial, provided him with ineffective assistance by, among other things, failing to secure a 911 tape before it was destroyed.  He further alleged that Bley had worked in the Adams County Public Defender's Office with Robert Pepin, counsel for his second trial, and that Pepin had been Bley's supervisor.  At the time of defendant's second trial, Pepin was no longer a public defender.  Defendant alleged Pepin had a conflict of interest because he had been Bley's supervisor and had been affiliated with the Adams County Public Defender's Office.  The trial court denied defendant's motion.

At his second trial, defendant was convicted of aggravated robbery, first degree criminal trespass, two counts of third degree assault, false imprisonment, and two habitual criminal counts.

After being convicted a second time, defendant moved for a new trial based upon Pepin's alleged conflict of interest.  The trial court denied defendant's motion.  In February 1999, defendant filed a postconviction motion to vacate and correct his illegal sentence and another motion requesting a new trial and oral argument, both asserting the same conflict of interest issue.  The trial court denied defendant's motions.

Defendant appealed, again arguing that Pepin had a conflict of interest.  Another division of this court affirmed his convictions, concluding that Pepin had no conflict of interest when he represented defendant during retrial. *People v. Brown*, (Colo. App. No. 99CA0542 Apr. 4, 2002) (not published pursuant to C.A.R. 35(f)) (*Brown II*).  That division also vacated defendant's sentence because the trial court considered unconstitutional prior South Carolina convictions when sentencing him.  It remanded the case for resentencing.  The mandate issued on December 6, 2002.

2

Following remand, defendant filed another postconviction motion, again asserting that Pepin had a conflict of interest.  On December 19, 2002, the trial court denied defendant's motion as successive.

In February 2003, defendant filed a timely pro se notice of appeal of the trial court's December 19, 2002 order.  *See* C.A.R. 25(b).  At that time, he had not yet been resentenced, and he requested that the case be transferred to a different judge for resentencing.   His request was granted, and the case reassigned.

On September 24, 2003, [the CCA] remanded the case to the trial court "for the purpose of the resentencing proceedings, and re-entry of any order entered after December 19, 2002, with jurisdiction."

On May 10, 2004, while the case was still on limited remand, defendant filed another motion for postconviction relief arguing again that Pepin had a conflict of interest.  The district court judge to whom the case had been reassigned conducted a hearing and denied defendant's motion.

On June 21, 2004, the court sentenced defendant to consecutive terms of thirty-five years on the aggravated robbery count and eight years on the criminal trespass count.  The court merged the third degree assault charges with the aggravated robbery count.  Defendant also received six months in county jail on the false imprisonment charge.  Following resentencing, defendant's February 2003 notice of appeal was recertified, and [an] appeal followed.

*People of the State of Colo. v. Brown*, No. 03CA0316, 1-4 (Colo. App. May 24, 2007);

ECF No. 25-9 at 2-5.  The trial court's denial of the May 10, 2004 postconviction motion

and of Applicant's aggravated sentence claim was affirmed on appeal.  ECF No. 25-9 at

15.  Applicant also filed another postconviction motion in 2008, which does not relate to

the two remaining claims that are before the Court on the merits.

Applicant initiated this action by submitting an Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 to this Court on August 8, 2014, raising nineteen

claims overall.  The Court conducted a preliminary review of the claims and dismissed

all but Claims Two and Three.  *See* ECF No. 62.  The remaining claims are as follows:

3

(1) Claim Two-Ineffective assistance of counsel (Jonathan Bley) at first trial for failure to preserve the 911 recordings in violation of the Sixth Amendment; and

(2) Claim Three-Denial of right to conflict-free counsel (Robert Pepin) in second trial in violation of the Sixth and Fourteenth Amendments.

## II.  LEGAL STANDARDS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* (collecting cases).  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Id.* at 99.  "Where there has been one reasoned state judgment rejecting a

4

federal claim," federal habeas courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "This 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question a court must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Id.* at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495) (citation omitted).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407 08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  The Supreme Court has also stated:

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also* *Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "[A] 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave

8

doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435.

The Court makes this harmless error determination based upon a thorough review of the state court record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000). "In sum, a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis v. Ayala*, --- U.S. ---, 135 S. Ct. 2187, 2199 (2015) (citing *Fry*, 551 U.S. at 119-120).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III. DISCUSSION

### A. Claim Two

In Claim Two, Applicant asserts that he and Mr. Bley, his assigned public defender, had several discussions regarding the evidence, which included the 911 recordings as it related to Officer Meyers' identification. ECF No. 1 at 12. Applicant further asserts that he was deprived of critical exculpatory evidence when Mr. Bley failed to file a motion with the court to preserve the 911 recordings. *Id.*

In the Reply, Applicant asserts that on April 28, 1993, Mr. Bley was appointed to represent him, and on or about May 17, 1993, Applicant appeared before the court in a preliminary hearing. ECF No. 91 at 4. Applicant also asserts that, after he learned he could not serve with Mr. Bley as co-counsel, he opted to proceed *pro se*. *Id.* Applicant

9

further asserts that on May 23, 1993, he filed a request for discovery, including a request for the 911 recordings, but the court took no action; also at this time the court appointed Mr. Joachim as advisory counsel.  *Id.*

Applicant also argues in the Reply it was unreasonable that Mr. Bley did not preserve the 911 recording during the "fifteen days" that he represented Applicant.  *Id.* at 28.  Applicant contends that in some cases video and audio recordings are routinely destroyed within twenty-four hours.  *Id.*  Applicant further contends a criminal defendant has the right to effective assistance of counsel, and counsel should take the initial steps to "protect the client's interests," which includes securing evidence well before the preliminary hearing.  *Id.* at 28.

Respondents argue in the Answer, for the first time, that Claim Two is procedurally defaulted in state court and, therefore, barred from federal habeas review. ECF No. 73 at 31-33.

"[S]tate-court procedural default . . . is an affirmative defense," and the state is "obligated to raise procedural default as a defense or lose the right to assert the defense thereafter."  *See Gray v. Netherland*, 518 U.S. 152, 165-66 (1996).  In the Order to File Pre-Answer Response, the Court instructed Respondents to address the affirmative defense of exhaustion of state court remedies.  ECF No. 14.  The Court also directed Respondents that if they did not intend to raise exhaustion as an affirmative defense they must notify the Court.  *Id.*  Respondents stated in the Pre-Answer Response that Applicant had preserved Claims Two and Three.  ECF No. 25 at 33-34.

The "best procedure is to plead an affirmative defense in an answer or amended answer."  *See Ahmad v. Furlong*, 435 F.3d 1196, 1202 (10th Cir. 2006) (finding

defendants were not necessarily barred from raising a qualified immunity defense in their motion for summary judgment). A constructive amendment is allowed if there is no prejudice to the opposing party and the amendment is not unduly delayed, done in bad faith, or with a dilatory motive. *Id.*

Respondents assert no basis in the Answer for failing to raise the procedural default argument in their Pre-Answer Response. Respondents, however in the Answer, relying on *People v. Rodriquez*, 914 P.2d 230, 249 (Colo. 1996) (quoting *People v. Bastardo*, 646 P.2d 382, 383 (Colo. 1982)), assert that "an argument raised under Rule 35 which does not precisely duplicate an issue raised on appeal will be precluded if its review 'would be nothing more than a second appeal addressing the same issues on some recently contrived constitutional theory.' " ECF No. 73 at 32. Respondents, therefore, conclude that Applicant's challenge to Mr. Bley's representation in the opening brief of the direct appeal of the second trial was properly precluded as successive in Applicant's first postconviction motion, because the same claim was raised on a different constitutional ground on direct appeal. *Id.*

Applicant argues that his conflict-free claim asserted against Mr. Pepin was based only in part on Mr. Bley's ineffective assistance of counsel. ECF No. 91 at 38. Applicant further argues that the Bley ineffective assistance claim is not the same claim as the Pepin conflict of interest claim and could not have been raised in his direct appeal and the claim was not subject to a successive bar. *Id.* at 38-39.

For the reasons stated below, the Court finds that the Bley ineffective assistance of counsel claim is not necessarily successive based on how Applicant presented the claim in the direct appeal and the CCA's analysis.

11

Applicant identified his claim on direct appeal as a denial of his right to conflict-free counsel at trial. ECF No. 25-4 at 2 (Opening Brief in direct appeal of conviction and sentence in retrial, Case No. 99CA542 (ECF No. 25-5 at 7). Applicant identified the conflict was with Mr. Pepin because he supervised Mr. Bley at the public defender's office, when Mr. Bley failed to preserve the 911 recordings while he was representing Applicant. *Id.* at 13. Applicant also asserted in the opening brief in Case No. 99CA542 that if he was prejudiced during his first trial by Mr. Bley's ineffective assistance of counsel then he had a conflict with Mr. Bley and the conflict would be imputed to Mr. Pepin, Mr. Bley's supervisor. ECF No. 25-4 at 12  Applicant further asserts that if he had an ineffective assistance of counsel claim against Mr. Bley for failing to preserve the 911 tapes, or for other similar reasons, the claims are not mooted by the second trial and the claim could still be raised after the conclusion of the direct appeal in the second trial. *Id.*

The CCA addressed and denied Applicant's conflict-free counsel claim based only on an imputed conflict analysis. ECF No. 25-5 at 3-7. The Bley ineffective assistance claim was not addressed on the merits by the CCA in either the direct appeal or postconviction motion appeal. A review of this claim, therefore, is subject to *de novo* review and the deferential standards of § 2254(d) do not apply. *See Gipson*, 376 F.3d at 1196. The Court, therefore, will proceed to the merits of Claim Two and deny the claim for the reasons stated below.

It was clearly established when Applicant was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Applicant must demonstrate both that

counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within a 'wide range' of reasonable professional assistance." *United States v. Rushin*, 642 F.3d 1299, 1306 (10th Cir. 2011) (quoting *Richter*, 562 U.S. at 104 (citation omitted). It is an applicant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances, *see Strickland*, 466 U.S. at 689, and that the errors were so serious that "counsel was not functioning as the 'counsel guaranteed the defendant by the Sixth Amendment.' " *Rushin*, 642 F.3d at 1307 (quoting *Richter*, 562 U.S. at 104) (emphasis and citation omitted). An applicant must show counsel failed to act "reasonably considering all the circumstances." *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 688).

Under the prejudice prong, an applicant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In assessing prejudice under *Strickland* the question is whether it is reasonably likely the result would have been different. *Richter*, 562 U.S. at 111. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (citing *Strickland*, 466 U.S. at 693).

Furthermore, under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking

13

whether defense counsel's performance fell below *Strickland's* standard," which is the question asked on direct review of a criminal conviction in a United States district court. *Richter*, 562 U.S. at 101. "When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105.

If Applicant fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See Strickland* 466 U.S. at 697. Also, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698. Pursuant to § 2254(e)(1), the factual findings of the state courts are presumed correct, and Applicant bears the burden of rebutting this presumption by clear and convincing evidence.

The Court is not persuaded by Applicant's argument that because Mr. Bley failed to preserve the 911 recordings during the time Mr. Bley represented Applicant, from sometime between April 26 and 28, 1993,[2] when he first consulted with Mr. Bley, to May 17, 1993,[3] when he withdrew pursuant to Applicant's request, he violated Applicant's right to effective assistance of counsel. ECF No. 91 at 4.

Applicant contends he requested within days of his arrest that Mr. Bley preserve the 911 recordings, which was at a critical post arrest stage of the prosecution, and

---

[2]    According to the court file, it appears that Mr. Bley may have had his first contact with Applicant on April 27, 1993. Mr. Bley signed an application for court-appointed counsel on April 27 that recommends Applicant should be appointed counsel. *See* Case No. 93CR964 Court File, Vol.1 at 3.

[3]    Applicant asserts that on or about May 17, 1993, he appeared at a preliminary hearing. A review of the state court transcripts indicates that the hearing was held on May 19, 1993. May 19, 1993 Pre-trial Hr'g at 2.

three days after the preliminary hearing. *Id.* at 27-28.  Applicant further contends that a defense attorney has a duty to preserve all evidence at the onset of arrest, which he knew, or should have known, that "litigation is imminent." *Id.* at 29.

"[T]here is no precise formula," but "an attorney fulfills the requirement to conduct a reasonable investigation when he [ ] spends time consulting with the defendant," and "files any necessary discovery and pretrial motions." *United States v. Medlock*, 645 F. App'x 810, 815 (10th Cir. 2016) (citing *United States v. Rivera*, 900 F.2d 1462 (10th Cir. 1990); *Denton v. Ricketts*, 791 F.2d 824 (10th Cir. 1986)).  As stated above, Applicant concedes that Mr. Bley spent time with him and, possibly as early as April 26, 1993, discussed with Applicant the need to preserve the 911 recording.

Pursuant to the state court file, the first request filed by Applicant for the 911 recording of Officer Nate Myers was on July 13, 1993.  *See* Case No. 93CR962 Court File Vol. 1 at 59-60.  The request of the 911 recordings was one of many discovery requests that Applicant filed on July 13.  There are no other motions or requests for the 911 recordings submitted by Applicant prior to July 13, 1993, in the state court file.  At the September 3, 1993 pretrial hearing, while addressing Applicant's motions for discovery, the prosecution stated that the "dispatch" and "radio traffic" tapes were not available because they are destroyed after sixty days.  Sept. 3, 1993 Pretrial Hr'g at 3.

Applicant must demonstrate that Mr. Bley's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687.  Applicant argues it was unreasonable that, during the time from possibly April 26, 1993, when he first met with Mr. Bley, (State court record indicates April 27, 1993), until May 17, 1993, (State court

15

record indicates May 19, 1993 was the date of the preliminary hearing), when Applicant

during the preliminary hearing asked to proceed *pro se*, at most twenty-two days, Mr.

Bley did not preserve any 911 recordings.  The Court finds that on May 19, 1993, when

Applicant asked to proceed *pro se*, there was still thirty-six days remaining to preserve

the recordings,[4] the Court does not find it was unreasonable for Mr. Bley not to have

preserved the 911 recordings at the time of the May 19 hearing.

Even if Applicant attempted to contact Mr. Bley about the recordings after he no

longer represented Applicant, and Mr. Bley did not respond, since Mr. Bley no longer

represented Applicant the lack of a response does not state a claim of ineffective

assistance of counsel.  Any unsuccessful attempt by Applicant to preserve the

recordings after Mr. Bley was dismissed as Applicant's attorney does not support a

finding that Mr. Bley was ineffective.  Furthermore, advisory counsel was appointed at

the preliminary hearing.  Applicant had the ability to consult with advisory counsel if

needed about how to preserve the recordings and sufficient time to preserve the

recordings.  Applicant's alleged failure to obtain the recordings does not impute Mr.

Bley's ineffectiveness.

Also, even if Mr. Bley's failure to preserve the tapes fell below an objective

standard of reasonableness, Applicant has failed to assert how he was prejudiced by

Mr. Bley's failure to preserve.  Applicant only speculates as to what information would

be obtained from the recordings.   Furthermore, during Officer Meyers' cross-

---

[4]  Based on the prosecution's statement at the September 3, 1993 pretrial hearing,
Applicant had sixty days from April 25, 1993, when the offense took place to preserve the 911
recordings.  The recordings would not have been scheduled for destruction until June 24, 1993.

examination, redirect, and voir dire by Applicant's attorney, the discrepancy of Officer Meyers' description of Applicant was at issue and brought into question based on Officer Meyers' previous testimony at a motions hearing.  Oct. 18, 1994 Trial Tr. at 103-06.  The photo that was taken of Applicant when he was booked in at the Northglenn Police Department was used to show that Officer Meyers' testimony regarding Applicant's lack of facial hair was incorrect.  *Id.*

Because Applicant was able to discredit Officer Meyers' testimony without the recordings, and because it is highly speculative that the 911 recordings would have provided critical exculpatory evidence, the Court finds that Applicant has failed to present clear and convincing evidence that demonstrates it is reasonably likely the result of his trial would have been different had Mr. Bley preserved the 911 recordings. *Richter*, 562 U.S. at 111.  Applicant, therefore, was not prejudiced by Mr. Bley not preserving the recordings before he was dismissed as Applicant's attorney.

Based on the above findings, Claim Two will be dismissed.

The Court also notes that in the Reply Applicant raises at least five additional claims: (1) denial of "hybrid representation"; (2) an "erroneous waiver of the right to counsel at the preliminary hearing"; (3) right to counsel of preference; (4) a due process violation by the prosecution's destruction of the 911 recordings; and (5) ineffective assistance of appellate counsel.  ECF No. 91 at 7-10, 42, and 46.  These claims either were not raised in the § 2254 Application filed by Applicant or were dismissed as procedurally defaulted previously in this action.

The Court need not address claims that are raised for the first time in a reply brief.  *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir., 2002) (citing *Codner*

17

*v. United States*, 17 F.3d 1331, 1332 n. 2 (10th Cir. 1994); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir. 1993)).  If claims are inappropriately raised pursuant to *Mora*, they most likely are barred from federal habeas review either as time-barred under 28 U.S.C. § 2244(d) or unexhausted and procedurally barred pursuant to *Steele v. Young*, 11 F.3d 1518, 1521 (10th Cir. 1993) (citations omitted).  At the very least, claims raised for the first time in the Reply do not relate back to Applicant's original Application filed on August 8, 2014, and consequently are successive and improperly before the Court for lack of jurisdiction.

### B. Claim Three

In Claim Three, Applicant asserts that on remand for new trial Mr. Pepin was appointed to represent him.  ECF No. 1 at 14.  He further asserts that Mr. Pepin had supervised Mr. Bley and Mr. Evans, Adams County public defenders, during Applicant's first trial proceedings.  *Id.*  Applicant contends that prior to the preliminary hearing in his first trial he had "significant disagreements" with Mr. Bley regarding the evidence to be presented and possible witnesses.  *Id.* at 13.  Applicant further contends that because he could not proceed as co-counsel with Mr. Bley, Mr. Bley withdrew as counsel.  *Id.* Applicant also contends that Mr. Evans represented Scott Bruce, who was an endorsed witness in Applicant's trials and who received a favorable plea agreement to testify against Applicant.  *Id.*  Applicant further asserts that the court held a hearing regarding the alleged conflict but found no need to investigate as no conflict existed.  *Id.* at 14.

In the Reply, Applicant restates his claims as follows.  He asserts that Mr. Pepin's failure to insure the "confidentiality of imputed information between the other members of his firm, and between individual clients," resulted in confidential

18

information, which should have been known only by Mr. Pepin and Mr. Bley, being used by Mr. Evans to obtain a favorable plea agreement for Mr. Bruce. ECF No. 91 at 17. Applicant further contends that there was a strong showing that client-attorney information from his prior representation by the public defenders was passed on by Mr. Bley to Mr. Pepin and Mr. Evans. *Id.* Applicant also contends that Mr. Pepin's termination from the public defender's office in May 1993 did not dissolve the conflict. *Id.* at 18. Applicant further contends that Mr. Pepin's imputed information about the cross-examinations of two witnesses, and his instruction to Mr. Bley that he could not participate in being co-counsel with Applicant in his first trial resulted in Mr. Pepin's conflict. *Id.* at 19.

The CCA addressed the conflict issues as follows:

Defendant contends that, because the public defender's office had a conflict of interest, the conflict must be imputed to defense counsel, and therefore, the trial court erred in denying his motion for conflict-free counsel. Specifically, he asserts an imputed conflict on two grounds: (1) the first deputy public defender provided ineffective assistance; and (2) the previously adjudicated conflict arising from the public defender's representation of a witness who testified against defendant. We disagree.

The United States and Colorado constitutions guarantee an accused in a criminal prosecution the right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. This right may be violated by representation that is intrinsically improper because of a conflict of interest. *People v. Castro*, 657 P.2d 932 (Colo. 1983).

"In general, a conflict of interest exists when: (1) an attorney's representation of one client is directly adverse to another client, (2) when the attorney's ability to represent a client is materially limited by the attorney's responsibility to another client or to a third person, or by the attorney's own interests." *People v. Edebohls*, 944 P.2d 552, 556 (Colo. App. 1996); *See* Colo. RPC 1.7(a), (b).

While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Colorado Rules of Professional Conduct. This is known as the "rule of imputed disqualification." *People ex rel. Peters v. District Court*, 951 P.2d 926, 930 (Colo. 1998).

A motion to discharge an attorney based on a conflict of interest is addressed to the sound discretion of the trial court, whose decision will not be reversed unless clear error or abuse of discretion is shown. *People ex rel. Peters v. District Court, supra*; *McCall v. District Court*, 783 P.2d 1223 (Colo. 1989).

### A.

Defendant argues that the first deputy public defender provided ineffective assistance of counsel by failing to obtain certain evidence during the fifteen days of representation in May 1993. Therefore, he argues, he has a conflict with the public defender's office. He further argues that this conflict is imputable to defense counsel because he was the head of the local public defender's office during that fifteen day period. However, after a hearing on the issue, the trial court found that any conflict that existed with respect to the first deputy public defender was not imputable to defense counsel. The trial court's determination is supported by the record, and therefore, we reject defendant's argument.

While it may be true that no public defender could represent defendant regarding his claim that he did not receive effective assistance, defense counsel was not similarly conflicted because he had severed his ties with the public defender's office more than four years before he represented defendant.

The record reveals the following facts that support the trial court's conclusion. The overlapping period of the public defender's representation of defendant and defense counsel's employment with that office was only fifteen days at the very beginning of the case, before the preliminary hearing. The record does not show action of any consequence during that time period. Although defense counsel was the head of the local public defender's office, defendant did not allege and the record does not show that defense counsel had any personal involvement in or knowledge of the public defender's representation of defendant at that time. Further, defendant did not allege and the record does not show that defense counsel has any personal, professional, or financial relationship with the public defender's office that would limit his ability to represent the defendant.

A contrary conclusion is not compelled by *McCall v. District Court, supra*. There, a conflict of interest was imputed to a deputy public defender who represented a defendant who was alleging that another deputy public defender had provided ineffective assistance of counsel. The supreme court applied the imputed disqualification rule to the public defender's office and held that a conflict of interest existed in that case. The situation here is distinguishable from *McCall* because here defense counsel was not a current member of the public defender's office and had not been for more than four years.

The *McCall* court also explained that members of the appellate division of the state public defender's office are precluded from arguing that a local deputy public defender rendered ineffective assistance of counsel because to do so would have

> [a]n inherently deleterious effect on relationships within the public defender system and would be destructive of an office upon which the criminal justice system relies to provide competent legal services to indigent defendants. Moreover, notwithstanding the vigor and skill with which the appellate division attorney might present the ineffective assistance of counsel argument, the conflict of loyalties inherent in the attorney's role would make the quality of his or her representation, and thus the fairness and impartiality of the appellate process, necessarily suspect in the public eye.

*McCall v. District Court, supra*, 783 P.2d at 1228.

However, such concerns are not applicable where, as here, a private attorney, who is a former member of the public defender's office, represents a defendant who is asserting a claim of ineffective assistance by the public defender's office.

B.

Defendant also argues that the conflict of interest of the public defender's office based on its representation of a witness who testified against him should also be imputed to defense counsel. We disagree.

At the hearing on defendant's motion, defense counsel informed the court that he had resigned from the public defender's office on July 31, 1993, and the prosecutor informed the court that the public defender's representation of the witness did not begin until September 1993. Neither side disputed these assertions, and the trial court relied upon both statements. Thus, the record discloses that defense counsel had

resigned from the public defender's office before it represented the witness.  Defendant has cited no authority, and we are aware of none, that would impute this conflict to defense counsel.

Under these circumstances, we conclude that the trial court properly declined to impute a conflict of interest to defense counsel.

*People of the State of Colo. v. Brown (Brown II)*, No. 99CA542, 2-7 (Colo. App. Apr. 4, 2002)  ECF No. 25-5 at 3-8.

The CCA also addressed the conflict of interest issue in Applicant's appeal of his

May 10, 2004 postconviction motion as follows:

## II. Ineffective Assistance and Conflict of Interest

Defendant contends that the trial court erred denying his motion for postconviction relief based upon findings in its June 2004 order that Bley did not render ineffective assistance and that Pepin did not have a conflict of interest.  We disagree.

### A.   Jurisdiction

Initially, we note that the People argue that the trial court lacked jurisdiction to conduct a hearing on defendant's May 2004 motion for postconviction relief and, thus, to deny that motion.  We will assume, without deciding, that the trial court had jurisdiction, and determine whether it properly denied defendant's motion.

### B.  Claims Raised in Prior Appeal

Defendant argues that the trial court erred in failing to find that Pepin had a conflict of interest and provided ineffective assistance of counsel based upon his past employment with the public defender's office.  We are not persuaded.

A "court shall deny" a petition for postconviction relief that raises claims that have already been ruled on in a prior postconviction proceeding or appeal. Crim. P. 35(c)(3)(VI); *see also People v. Abeyta*, 923 P.2d 318, 320 (Colo. App. 1996) (noting that the rule "indicates that there must be some finality in the reviewing process").  Thus, a trial court does not err in denying a defendant's motion for postconviction relief when the alleged ineffective assistance rests upon errors that "have been reviewed and found to be without merit."  *People v. Fitzgerald*, 973 P.2d 708, 712 (Colo. App. 1998).

22

Here, defendant again raises issues that have been reviewed and found to be without merit by a division of this court in his 2002 appeal. There he argued that Bley provided ineffective assistance of counsel by failing to procure the 911 tape, and that Pepin had a conflict of interest because he was employed with the public defender's office as Bley's supervisor at the time of Bley's alleged ineffective assistance. *Brown II, supra*. Defendant also argued that the public defender's office's conflict of interest, based upon its representation of a witness adverse to him, should be imputed to Pepin. *Brown II, supra*. Defendant raised those claims in the context of a direct appeal, rather than an appeal from the trial court's denial of a Crim. P. 35(c) motion. However, there is no indication that he was not allowed to fully litigate his claims. *Brown II, supra*. That division concluded that defendant's arguments lacked merit. Specifically, it concluded that Pepin did not have a conflict of interest, imputed or otherwise, because he acted as Bley's supervisor, or because he had been employed by the public defender's office. *Brown II, supra*.

Because the *Brown II* division considered and rejected defendant's identical arguments, the trial court did not err in denying defendant's motion for postconviction relief with respect to those arguments. *See Fitzgerald, supra*, 973 P.2d at 712. And because the trial court properly denied defendant's motion with respect to these claims, we need not consider defendant's specific allegations of error. *See People v. Valdez*, 789 P.2d 406, 407 (Colo. 1990) (affirming trial court's findings regarding ineffective assistance for different reasons than those relied upon by the trial court).

*See People of the State of Colo. v. Brown*, No. 03CA0316, 4-7 (Colo. App. May 24, 2007); ECF No. 25-9 at 5-8.

A criminal defendant has a constitutional right to representation by an attorney that is free from conflicts of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). In order to prevail on a claim that an attorney was ineffective because of a conflict of interest, Applicant must show both that his trial attorney actively represented conflicting interests and that the conflict of interest adversely affected his attorney's performance. *See id.* Applicant's Sixth Amendment right to effective assistance of counsel is rooted

in "the fundamental right to a fair trial," *Strickland*, 466 U.S. at 684, which includes the right to conflict-free representation, *Cuyler*, 446 U.S. at 350.

As stated above, to prevail on an ineffective assistance of counsel claim, Applicant must show that his attorney's performance was deficient and that he was prejudiced as a result. *Strickland*, 466 U.S. at 687. Where a criminal defendant must affirmatively prove prejudice to succeed on an actual ineffectiveness claim based on deficient performance, *id.* at 693, "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Id.* at 692. The Supreme Court has explained, however, that this is not a "*per se* rule of prejudice." *Id.* Instead, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* (quoting *Cuyler*, 446 U.S. at 350).

Applicant's conflict of interest claims are speculative regarding any discussion Mr. Pepin may have had with Mr. Bley, and with Mr. Evans, who represented a witness from Applicant's trials in a later criminal proceeding. Even if the Court were to find that Mr. Bley talked with Mr. Pepin at the time of Applicant's first trial, and also supervised Mr. Evans, these findings alone do not establish a conflict of interest. Furthermore, nothing Applicant presents demonstrates that any alleged contact by Mr. Pepin with Mr. Bley and Mr. Evans affected Mr. Pepin's performance in Applicant's second trial.

The factual findings relied on by the trial court are presumed correct in this federal habeas proceeding, and have been found by the Court to be supported by the state court record. *See* Case No. 93CR964 Court File Vol. 4 at 117-18 (Mot. Dism. Counsel, Sept. 10, 1998); Sept. 11, 1998 Hr'g Tr.; Court File Vol. 4 at 174-79 and 183-

24

88 (Mots. New Trial and Oral Argument, Oct. 5 and 13, 1998); Court File Vo. 4 at 210-11 (Motion Dism. Counsel, New trial and Appeal, Dec. 18, 1998); Dec. 30, 1998, New Trial Hr'g Tr.; Case File Vol. 6 at 37-56 (Aug. 12, 2001 postconviction motion); Court File Vol. 7 at 15-27 (Jan. 24, 2003 postconviction motion); May 21, 2004 Postconviction Hr'g Tr.

Applicant did not complain at his preliminary hearing held on May 19, 1993, that Mr. Bley was ineffective.  May 19, 1993 Prelim. Hr'g Tr.  After the court determined that Mr. Bley, a public defender, was prohibited statutorily from proceeding as advisory counsel, Applicant agreed with the court that the reason he wanted to proceed *pro se* was because the court would not permit both Mr. Bley and Applicant to question witnesses at the preliminary hearing.  *Id.* at 7.   Only later, when he filed motions to dismiss, and at the hearing for a new trial, after the conclusion of the second trial, does Applicant assert that Mr. Bley did not preserve the 911 transcripts, which were subsequently destroyed.  Dec. 30, 1998 New Trial Hr'g Tr. at 9.  Applicant further stated at the hearing for a new trial that Mr. Bley failed to (1) "cross-examine" witnesses before the preliminary hearing; (2) do a trace on the mask for hair fibers; (3) to make some sort of identification of the robber; and (4) raise the issue about Bruce Scott.  *Id.* at 9-10.  Applicant also stated that he called Mr. Bley's office, but Mr. Bley was never there, and whoever answered the telephone said they would give the message to Mr. Bley's supervisor.  *Id.*  at 11.  Applicant, however, further asserted that he never talked with Mr. Pepin, when Mr. Bley represented Applicant.  *Id.*  Applicant also asserted Mr. Bley stated at a particular hearing that he would have to talk with his supervisor about participating as advisory counsel.  *Id.*

25

The trial court found at the December 30 hearing that the earliest Mr. Bley was in contact with Applicant was on or about April 28, 1993, and two weeks later on May 19, 1993, a preliminary hearing was conducted, at which Applicant moved to proceed *pro se*. *Id.* at 12-13.   The trial court determined that at the most there was a disagreement about how the case should be handled and what investigations should be conducted, but no allegations of a conflict of interest, and, therefore, no support for finding Mr. Pepin should have been disqualified from representing Applicant.   *Id.* at 13.

Mr. Pepin testified at the postconviction hearing.   May 21, 2004 Postconviction Hr'g Tr. at 18-69.   During cross-examination, Mr. Pepin testified that (1) he did not recall a conversation with Mr. Bley regarding the 911 recordings; (2) no agency at the time of the preliminary hearing would destroy recordings less than thirty days; (3) not necessarily is a request to preserve the recordings done prior to a preliminary hearing; and (4) Mr. Bley would not have been able to preserve the tape once he no longer represented Applicant.   *Id.* at 25 and 28-29.

Finally, Mr. Pepin testified that he did not use Mr. Bruce's plea agreement in his cross of Mr. Bruce, because Mr. Pepin wanted Mr. Bruce to be perceived by the jury as a believable witness.   *Id.* at 38.   Mr. Bruce had not described the robber as having a beard and testified he had punched Applicant twice in the face, with one of the punches causing the robber to drop to his knees.   *Id.* at 37.   Mr. Pepin testified that the strategy was to demonstrate to the jury that Applicant could not have been the robber, because he had a beard at the time of the robbery and the injuries identified on his face were not conducive to the punches Mr. Bruce stated he had given to Applicant.   *Id.*

Applicant, therefore, does not point to any clear and convincing evidence that Mr. Pepin had a conflict of interest. Applicant does not demonstrate how the alleged basis for the conflicts affected his relationship with Mr. Pepin and resulted in Mr. Pepin being ineffective in his representation of Applicant in the second trial. The Court's review of the state court record reveals that a sound strategy existed for Mr. Pepin to not cross-examine Mr. Bruce about the favorable plea agreement he received when Mr. Evans represented him in his own criminal proceeding. The Court also finds that given (1) the short duration of time Mr. Bley represented Applicant; (2) Applicant's stated desire to proceed *pro se;* and (3) the length of time Applicant had to obtain the 911 recordings before they were destroyed there would be no basis for finding ineffective assistance of counsel by Mr. Bley that could be imputed to Mr. Pepin during the time he was Mr. Bley's supervisor at the public defender's office. Based on these findings, Mr. Pepin did not have actively conflicting interests that adversely affected his performance.

The CCA decision regarding Claim Three, therefore, did not result in a decision that was contrary to, or involve an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, and did not result in a decision that was based on an unreasonable determination of the facts. Claim Three will be dismissed on the merits.

## IV. CONCLUSION

Accordingly, it is ORDERED that Applicant Toney L. Brown's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1) is DENIED and the civil action is dismissed WITH PREJUDICE. It is

27

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant Toney L. Brown has not made a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c).  It is

FURTHER ORDERED that the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he also must pay the full $505 appellate filing fee or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated this 20th day of March, 2017.

BY THE COURT:

William J. Martínez
United States District Judge